## Newsham v. United Telephone Company of Pennsylvania

*Swope Brown & Swope*, for plaintiff.

*Keith, Bigham & Markley*, for defendant.

SHEELY, P. J., May 29, 1954.—This matter is before the court on defendant's motion for judgment on the pleadings. Plaintiff's action is based upon the alleged omission of a statement or mention of plaintiff's professional capacity from the alphabetical list of subscribers, and the alleged omission of plaintiff's name, address, and telephone number from the Gettysburg Classified Business List under the heading "Veterinarians", in defendant's 1953 telephone directory, all of which plaintiff claims was contrary to the terms of the verbal agreement alleged to have been entered into between plaintiff and defendant. Defendant filed an answer with new matter, alleging that since about January 1, 1938, it has had on file with the Pennsylvania Public Utility Commission the following tariff provision:

"Application For Service

"The telephone company shall not be liable for damage claimed on account of errors in or omissions from its directories nor for the result of the publication of such errors in the directory."

Plaintiff admits that this provision is contained in defendant's tariff. Defendant contends that this provision is a tariff regulation within the statutory definition (66 PS §1102, subpar. 22) and, having been filed in accordance with the statutory provision (66 PS §1142), is binding upon plaintiff and defendant and bars recovery by plaintiff of the damages claimed in this action.

Regulations governing directories are properly included in tariffs:

Steerman v. Bell Telephone Company of Pennsylvania, 24 P. U. C. 316 (1943). Where service is contracted for, the rate so fixed by the Public Utility

Commission represents "the whole duty and the whole liability" of the company: Western Union Telegraph Company v. Esteve Brothers & Company, 256 U. S. 566, 572; 41 S. Ct. 584, 586; 65 L. Ed. 1094, and "becomes a part of the contract": Correll v. Ohio Bell Telephone Co., 63 Ohio App. 491, 27 N. E. 2d 173. Valid rules and regulations affecting rates, contained in a tariff filed with the Public Utility Commission, become a part of the contract entered into between the company and the subscriber by operation of law: Riaboff v. Pacific Telephone & Telegraph Co., (Cal. App.) 102 P. 2d 465 (1940). The tariff provision in this case is sufficient to relieve the company from liability to plaintiff if such tariff provision is valid. The question to be determined is whether a telephone company can contract against liability for negligence in the publication of its directories by a provision in its tariff.

The general rule governing contract provisions providing for exemption from liability for negligence is stated in A. L. I. Restatement of The Law of Contracts, §575, as follows:

"A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequenses of negligence is illegal if . . . (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

A provision against liability for acts of negligence contained in the contract between persons conducting a strictly private business and relating entirely to their personal and private affairs does not contravene any policy of the law (Cannon v. Bresch, 307 Pa. 31, 35 (1932), although such contracts are not favored and are strictly construed: Crew v. Brad-

street Co., 134 Pa. 161 (1890). But, where one of the parties is charged with a duty of public service, such contracts are void as contrary to public policy when applied to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation. The rule is most frequently applied to common carriers: Eckert v. Pennsylvania Railroad Company, 211 Pa. 267 (1905) ; Quaker Worsted Mills Corporation v. Howard Trucking Corporation, 131 Pa. Superior Ct. 1 (1938). Thus, where a railroad pass contained provisions that the holder assumed all risks of personal injury and released the company from all liability therefor, it was held that the provision was ineffective to relieve defendant from liability where lack of due care is shown: Turek, admrx., v. Pennsylvania Railroad Company, 361 Pa. 512, 515 (1949). The rule has also been applied to telegraph companies which are permitted to make reasonable rules affecting responsibility, but may not stipulate for exemption from liability caused by their own negligence: Bailey & Company v. Western Union Telegraph Company, 227 Pa. 522, 529 (1910). The operator of a parking lot cannot stipulate for nonliability for negligence: Baione v. Heavey, 103 Pa. Superior Ct. 529 (1931). The rule has recently been applied to banks. In Thomas v. First National Bank of Scranton, 376 Pa. 181 (1954), a depositor, seeking to stop payment of his check, executed to the bank a stop payment request which contained a clause releasing the bank from all liability if, in violation of the order, the bank paid the check through inadvertence, accident or oversight. The Supreme Court held that the agreement, releasing the bank from liability for negligence, was void as against public policy.

Defendant in the present case is undoubtedly charged with a duty of public service, and it did

receive, or was promised, compensation for the contracted service which included the listing of plaintiff's name in its directory. The rule, as stated, recognizes the fact that a public service company may enter into contracts which are not in the performance of any part of its duty to the public, e. g., it might lease a storeroom in its office building. A provision in such a lease exempting the company from liability for negligence would not be illegal: Manius et vir, v. Housing Authority of the City of Pittsburgh 350 Pa. 512 (1944). The question then is whether the publication of the directory was the performance of any part of defendant's duty to the public. If it was, the attempted exemption from liability for the consequences of negligence would be illegal.

In Schwanke v. Wisconsin Telephone Company et al., 199 Wis. 552; 227 N. W. 30, 68 A. L. R. 1320 (1929), it was stated:

"A telephone directory is an indispensable element of telephone service. Without such a directory, the presence of a telephone in a place of business is of negligible value."

In California Fireproof Storage Co. v. Brundige, 199 Cal. 185, 188; 248 Pac. 669, 670; 47 A. L. R. 811 (1926), it was said:

"A telephone directory in an essential instrumentality in connection with the peculiar service which a telephone company offers for the public benefit and convenience. It is as much so as is the telephone receiver itself, which would be practically useless for the receipt and transmission of messages without the accompaniment of such directories."

In that case the court further held that the insertion of a classified list or of display advertisement was "a mere incident in the operation of its public service over which the regulating body ought to have full control."

In Hamilton Employment Service v. New York Telephone Co., 253 N. Y. 468, 171 N. E. 710 (1930), the court pointed out that the preparation and delivery of a directory is not a primary part of the business of a telephone company, but is wholly subordinate to the main transaction of transmitting messages. While this is true, an incorrect listing in the directory may make a telephone just as inaccessible as if it had been disconnected. It is readily apparent that the publication of a directory is an essential part of the business of the company, even though subordinate to the business of transmitting messages, and is the performance of a part of its duty to the public. That being true, it would follow that a provision for exemption from liability for the consequences of negligence would be illegal and void as contrary to public policy if included merely in a contract.

Defendant contends that the fact that the regulation exempting it from such liability was included in its tariff, and that its rates are to some extent dependent upon the exemption from liability, makes the provision valid, and has cited a number of authorities from other jurisdictions so holding. The theory of these cases is that the rights and liabilities of the parties must be determined with reference to the law in effect at the time the contract was made which would include the requirement of the law that the utility company file its rates and its rules and regulations, and that it be prohibited from extending any rule or regulation. See Correll v. Ohio Bell Telephone Co., 63 Ohio App. 491, 27 N. E. 2d 173; Riaboff v. Pacific Telephone & Telegraph Co. (Cal. App.) 102 P. 2d 465 (1940); Cole v. Pacific Tel. & Tel. Co. 112 Cal. App. 2d 416, 246 P. 2d 686 (1952); Hamilton Employment Service v. New York Telepohne Co., 253 N. Y. 468, 171 N. E. 710 (1930). Defendant also relies upon

Shapiro v. The Bell Telephone Co. of Penna., 92 Pitts. L. J. 10 (1944), where the court said:

"We consider the regulation permitting the utility to contract against liability for its own negligence . . . to be unreasonable and against public policy, and if the case were here presented for the first time we would so hold. However, the contrary rule has been well established by the considered opinions of the higher tribunals, all of which must be respected and the regulation upheld accordingly."

The court cited none of the opinions of the higher tribunals.

We do not consider that a provision exempting the company from liability contained in a tariff regulation has any different effect than a similar provision in a contract between the parties. If a provision in a contract exempting the company from liability for negligence is void as contrary to public policy, a similar provision contained in a tariff regulation would likewise be void as contrary to public policy. The question is not whether such a provision is reasonable, but is whether or not the provision is valid. It is true that the company's liability for damages would have an effect upon the rates which it must charge, but this is true of its general liability for negligence in connection with any of its activities. The only effect of including the exemption in the tariff regulation was to make such exemption a part of its contract with the plaintiff by operation of law, and was not to make such exemption valid.

We conclude that the tariff regulation relied upon by defendant is void as against public policy insofar as it attempts to exempt defendant from liability for the consequences of a willful breach of duty or for the consequences of negligence. Plaintiff should be given an opportunity to prove the facts of his case so that it may be determined whether the facts fall within

the situation under which the exemption is invalid, and whether plaintiff did, in fact, sustain damage thereby.

And now, May 29, 1954, defendant's motion for judgment on the pleadings is overruled.